[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Danbury.
Many of the facts that give rise to this action are not in dispute.
The plaintiff and the defendant, whose maiden name is Kara Dillon Quinn, were married on February 18, 1989, in Wilton, Connecticut. The plaintiff has resided continuously in the state of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are three minor children issue of this marriage: Megan Elizabeth Grasso born July 28, 1989, Christian Augustus Grasso born November 2, 1990, and Grace Agnes Grasso born May 24, 1993. No other minor children have been born to the defendant wife since the date of marriage of the parties. Neither party has received state assistance.
From the evidence presented, the court finds that the plaintiff is solely at fault for the breakdown of the marriage. The court finds that the sole cause of the breakdown of the marriage is the plaintiff's involvement with another woman, as well as his excessive drinking. The plaintiff has been living with his girlfriend since February of 1996. He commenced to have a relationship with her in November of 1995. He vacated the family residence in October of 1995. In December of 1995, the CT Page 1062 plaintiff gave his girlfriend $20,000. That $20,000 has never been shown on any financial affidavit filed by the plaintiff. The plaintiff has not presented any credible evidence as to why the $20,000 was turned over to his girlfriend, or what has happened to it. The plaintiff claims that he owes his girlfriend $8000 for a loan she made to him. The court finds that that claim is not credible.
The plaintiff is a carpenter by trade and contractor. The plaintiff graduated high school in 1973. He was born on February 12, 1955.
The plaintiff's financial affidavit dated October 14, 1997, shows a liability to the IRS in the amount of $31,583 and a liability to the Connecticut Department of Revenue Services with a balance of $5000. The plaintiff has not paid the IRS or State of Connecticut tax since 1989. The plaintiff claims that for the first six months of 1997, he earned approximately $20,000. His financial affidavit dated May 28, 1996, shows gross weekly income of $1200 and net weekly income of $669.80. The plaintiff filed a petition in bankruptcy dated March 11, 1997. He was discharged in bankruptcy on or about July 22, 1997. The plaintiff claims he is unable to receive credit in order to purchase materials to do construction as a result of his bankruptcy petition, and he has, therefore, had a reduction in his weekly income. The court finds that that claim is not credible. The court finds that the plaintiff continues to earn a gross of $1200 weekly with net weekly earnings of $669.80, and that he has an earning capacity in that amount. His financial affidavit of July 22, 1997, shows gross weekly income of $726.92 and net weekly income of $423.08. His financial affidavit dated October 14, 1997, shows gross weekly income of $866 and net weekly income of $564.55. His financial affidavit dated July 22, 1997, shows rent of $186.05. His financial affidavit dated October 14, 1997, shows rent for the same premises of $372.09. The monthly rent in question is paid by the plaintiff and the woman with whom he resides. The total rent is $1670 monthly. He has an agreement with the landlord to do work on the house at $40 per hour, which will either be used to reduce the rent or for which he will be paid when the house is sold. At the present time, he has $3000 due to him from Mr. Kristoff for work that he has done on the house. That $3000 is not shown as an asset on the plaintiff's financial affidavit. The plaintiff does business under the name of Grasso Builders. His hourly rate is $35 to $40. The plaintiff's tax returns for the periods 1994 and 1995, both of which were CT Page 1063 prepared and filed in 1996, show the following:
______________________________________________________________ | | Gross Business Receipts | Profits | |_______________|___________________________|__________________| | 1994 | $70,000 | $55,255 | |_______________|___________________________|__________________| | 1995 | $60,000 | $43,950 | |_______________|___________________________|__________________|
The plaintiff owns tools and furniture in his possession with a fair market value of $3500. He has approximately $1500 in his checking account. The plaintiff has a child from his first marriage. He is paying support of $500 monthly for that child. He has paid $17,000 in legal fees to date. The plaintiff also owns a 1984 Volvo with a fair market value of $400 that is not shown on his financial affidavit. The woman with whom the plaintiff resides has earnings of approximately $20,000 annually and, in addition, receives combined alimony and support of $1800 per month. The plaintiff also owned a van that he sold and netted approximately $5000 to $6000. He gave all of the money to the woman with whom he resides. He has also made payments on her leased Mitsubishi automobile. When the lease on the Mitsubishi ended, the plaintiff's girlfriend bought the vehicle for several thousand dollars and sold it for around $11,000. The court further finds that the plaintiff has received income in 1995 from a New York bank arising out of work that was to be performed on buildings on behalf of the bank.
The parties own a family home at 66 South Olmstead Lane, Ridgefield, Connecticut that they purchased on June 11, 1993, for $150,000. The property was in bad repairs and it was purchased with the idea that it would be remodeled by the plaintiff and be sold at a profit. The plaintiff did many of the major repairs that were required for the property. Both the financial affidavit of the plaintiff and that of the defendant have combined the first mortgage and the home equity line into the mortgage balance. From the affidavit of the plaintiff and that of the defendant have combined the first mortgage and the home equity line into the mortgage balance. From the evidence presented, the court finds that the fair market value of the family home is $345,000 and that it has a mortgage with a balance of $280,000, and an equity of $65,000. The family home is presently under foreclosure as a result of nonpayment of the first mortgage. In addition to the balance due on the first mortgage, there is an additional $17,840 CT Page 1064 in arrearage due on the mortgage, less credit for prepaid insurance.
The plaintiff seeks an order of joint custody with primary residence with the defendant. He is also seeking reasonable visitation. The plaintiff presently provides medical coverage for the children through Washington National. The policy costs $720 annually. It has a $10,000 annual deduction for all three children. The youngest child will commence kindergarten two and one-half days a week in September of 1998.
The defendant was born on September 26, 1967. During the period of time that the plaintiff and the defendant lived together, they had a financially secure lifestyle. At one time, the plaintiff told the defendant that he was earning over $120,000 a year. They had vacations to Sanabel, Florida, where they stayed at an inn for $350 a night. The defendant had belonged to a health club at a cost of $67 monthly. She does not presently belong to that club as she cannot afford it. She was able to afford $200 for her haircut and styling every two to three months during the time the parties resided together. All of the household bills were being kept current during the time they resided together. The plaintiff has formed a partnership with Frank Kristoff to remodel antique homes. The plaintiff also has an agreement with another party who owns some forty lots, under which he is to be employed to build homes which will result in his earning approximately $200,000 per year.
The defendant graduated high school in 1985. She presently works part time for her brother and brings all three children to the office as she cannot afford day care.
The defendant's gross and net income is $80 weekly. The weekly payment on the first mortgage on the home is $455 and the weekly payment on the second mortgage is $81. She has total weekly expenses of $1110. She owns a 1985 Saab. She owns furniture with an approximate value of $3000. She has liabilities that total $16,832. No payments have been made on the first mortgage or the second mortgage by the plaintiff since March of 1997.
The American Express liability shown on the defendant's financial affidavit is in her name only. The Macy's liability is in both names. The VISA liability is in the defendant's name only. The MasterCard liability is in both names. The Lord and Taylor liability is in both names. The Joseph Strickland CT Page 1065 liability arises from a debt from a friend of the defendant. He provided funds for her to purchase her Saab motor vehicle and, also, to make payments on the line of credit. The American Express liability was incurred to purchase a computer in the Spring of 1995. The Macy's liability was incurred for clothing. The VISA liability was incurred for attorneys fees and for cash advances by the defendant. The MasterCard liability is one that the plaintiff partially incurred. The Lord and Taylor liability was incurred only by the defendant. The liability to Mr. and Mrs. Quinn, the defendant's parents, was for attorneys fees for the defendant.
The defendant took possession of two guns that are owned by the plaintiff and presently has them at her brother's residence. She agrees that they should be turned over to him.
This court has considered the provisions of § 46b-82
regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issue of property division, and has considered the provisions of § 46b-56 and § 46b-56a
regarding the issues of custody, joint custody and visitation, and has considered the provisions of § 46b-84 and the child support guidelines regarding the issue of support, and has considered the provisions of § 46b-62 regarding the issue of attorneys fees. The court enters the following orders.
ORDERS
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The plaintiff is ordered to pay to the defendant alimony in the sum of $55 per week. Alimony shall terminate upon the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant; (c) May 24, 2011. The youngest child will be eighteen on that date and the defendant will, therefore, not have the need for alimony that she presently has.
2. The provisions of § 46b-86 (a) and 46b-86 (b) are applicable. CT Page 1066
C. BY WAY OF CUSTODY VISITATION AND SUPPORT
1. The court awards sole custody of the minor children to the defendant.
2. The plaintiff is awarded reasonable, liberal and flexible visitation.
3. The plaintiff shall pay to the defendant as support the sum of $245 per week. Under the child support guidelines based on the plaintiff's gross weekly income of $1200 and his net weekly income of $669.80, the amount of support that he would pay would be $295 per week. The court finds that the guidelines are inappropriate and inequitable as a result of the plaintiff paying support for a child from his prior marriage, and thereby reduces the support to $245 per week. He is to provide health insurance for the benefit of the minor children. He is to pay all of the deductible amounts regarding the health insurance for all of the children. The parties are to divide equally all unreimbursed amounts for health insurance other than for the deductible amounts. The provisions as to the maintenance of health insurance are subject to and are in accordance with § 46b-84d.
4. The plaintiff shall be entitled to claim the oldest and the youngest children as dependents for all tax reporting purposes for so long as he is current in all of his alimony and support orders at the end of such calendar year. At the point in time when the oldest child can no longer be claimed, then the plaintiff may continue to claim the youngest child for all tax reporting purposes for each calendar year in which he is current in all of his alimony and/or support orders at the end of such calendar year. Each party execute whatever documentation is necessary to facilitate this order.
D. BY WAY OF PROPERTY ORDERS
1. The plaintiff is to quitclaim to the defendant all of his right, title and interest in the family home located at 68 South Olmstead Lane, Ridgefield, Connecticut within thirty days from the date this decision is filed. The deed is to be delivered to the office of counsel for the defendant.
2. The two guns that the defendant has possession of that are at her brother's residence are to be turned over to the plaintiff within thirty days from today's date. CT Page 1067
3. The plaintiff is to turn over to the defendant two Theorem oil paintings, previously given to her by the plaintiff's mother, within thirty days from the date this decision is filed.
4. All furniture, tools and furnishings in the possession of the plaintiff are awarded to the plaintiff.
5. The checking account shown on the plaintiff's financial affidavit with a balance of approximately $1500 is awarded to the plaintiff.
6. The 1984 Volvo motor vehicle owned by the plaintiff is awarded to the plaintiff.
7. The plaintiff is to pay the liabilities shown on his financial affidavit and hold the defendant harmless therefrom.
8. The defendant is to pay the liabilities shown on her financial affidavit and hold the plaintiff harmless therefrom.
9. The 1985 Saab is awarded to the defendant.
10. All furnishings and furniture in the possession of the defendant are awarded to the defendant.
11. All business records of the plaintiff in the possession of the defendant are to be turned over to the plaintiff within thirty days from the date this decision is filed.
12. The $3000 due to the plaintiff from Mr. Kristoff is awarded to the plaintiff.
E. BY WAY OF ATTORNEYS FEES
1. No attorneys fees are awarded in favor of either party.
F. PENDENTE LITE ORDERS
1. All pendente lite orders remain in effect until the date this decision is filed.
2. Any arrearages are not merged into the judgment.
G. MISCELLANEOUS ORDERS
CT Page 1068
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and forward it to counsel for the defendant for signature and filing.
2. The parties are to exchange copies of their federal and gate income tax returns by certified mail, return receipt or registered mail, return receipt within fifteen days after which such returns have been filed for so long as there is an outstanding alimony and/or support order or any outstanding arrearages from any such orders.
Axelrod, J.